MARY F. ROBERTS, Appellant, *v.* NEW YORK LIFE INSURANCE COMPANY, Respondent.

First Department, February 4, 1921.

Vendor and purchaser — mechanics' liens filed between date of contract of purchase and date for closing constitute an incumbrance — right of purchaser to recover back payment on account of purchase price, where vendee refuses to remove such incumbrance and deed is to contain no covenant against incumbrances — necessity of allegation and proof as to purchaser's readiness and willingness to perform.

Mechanics' liens filed against premises between the date of a contract of sale and the date for closing, which were unsatisfied on the latter date, constitute an incumbrance entitling the purchaser to rescind and to

recover back a payment made on account of the purchase price pursuant to the terms of the contract, where it appears that there was to be no covenant against incumbrances in the deed, and that the vendor although able to remove said liens refused to grant an extension of the time for closing and insisted that the purchaser take title on the mere oral promise of its attorney that he would bond the liens.

The obligations of the parties to an executory contract of purchase and sale are concurrent and dependent, and there can be no recovery of damages for the vendor's alleged breach, without an allegation in the complaint and proof upon the trial of the vendee's readiness and willingness to perform; but a formal tender and demand by the vendee is unnecessary where the vendor in advance refuses to comply with the terms of the contract or where he has placed himself in a position where performance is impossible.

MERRELL, J., dissents, with opinion.

APPEAL by the plaintiff, Mary F. Roberts, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 17th day of November, 1919, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 23d day of October, 1919, denying plaintiff's motion to set aside the verdict and for a new trial made upon the minutes.

*John S. Wise, Jr.,* for the appellant.

*Edward E. McCall* of counsel [*George W. Hubbell,* attorney], for the respondent.

PAGE, J.:

On January 2, 1917, William C. Roberts entered into a contract with the New York Life Insurance Company for the purchase of the land and premises known as Madison Square Garden for the sum of $2,400,000, payable, $100,000 in cash upon signing the contract, $300,000 at the time and place of the delivery of the deed, and $2,000,000 by executing and delivering a bond and mortgage to secure payment of that sum on the 1st day of January, 1922. The New York Life Insurance Company agreed on its part to execute, acknowledge and deliver a proper deed, with covenants only against grantor's acts, for the conveying to Roberts or assigns the fee simple of the said premises, free from all incumbrances, except taxes, assessments and water rates which were payable after the date of the contract, and also subject to certain leases and book-

ings, a schedule of which was attached to the contract, and which deed was to be delivered on March 1, 1917, at twelve o'clock noon. The contract further provided: "And it is hereby expressly understood and agreed between the parties hereto that unless title shall be taken at the said time and place, or unless said time of closing shall be duly extended, then this contract, at the option of said party of the first part [the New York Life Insurance Company], shall become void and the said payment of One hundred thousand ($100,000) dollars made to it shall be retained by it as liquidated damages. In case any valid defect to the title is found, and the same is rejected therefor by the purchaser, then this contract shall become void and the said sum of One hundred thousand ($100,000) dollars shall be returned with interest."

The contract provided that the purchaser was to be Roberts or a corporation to be thereafter formed. Such a corporation was ∟ ¬ned and on February 3, 1917, Roberts assigned all his interes⸍ in the contract to the Garden Tower Corporation, in which one Paris E. Singer was interested. In order to provide for the payment of the $300,000, Singer purposed to secure a loan upon the collateral security of Singer Sewing Machine Company stock. Owing to the condition of the money market, he experienced difficulty in obtaining the loan upon satisfactory terms. Thereupon, through the influence of certain officers of the defendant, a loan for $300,000 was arranged with the New York Trust Company, but upon terms that Singer considered unduly onerous. An application was made for an extension of the time of closing title until May first, and later, if that was impossible, until April first. One of the vice-presidents of the defendant, on declining to grant this extension, said that the purchasers would either take title at twelve o'clock noon on March first, " or off go their heads," and " furthermore, when we cut off their heads we will cut it off close up to the shoulders." Between the date of the contract and the date for closing, mechanics' liens were filed against the premises, one on January 25, 1917, for $1,337.80, and one on February 27, 1917, for $1,199.29, which were unsatisfied on March first. When the parties met to close title, these outstanding liens were called to the attention of the attorney for the defendant, and it was suggested that a few days' adjourn-

ment be taken to enable the defendant to clear the title. The defendant's attorney said that he had no authority to grant any adjournment, that he could bond those liens in an hour, and insisted on the Garden Tower Corporation then and there taking title. He tendered the deed duly executed and the bond and mortgage prepared for execution, and demanded performance on the part of the corporation. Thereupon the attorney for the corporation refused the tender on the ground that the property was not free and clear of all incumbrances except those specified in the contract, and demanded the return of the $100,000.

The Garden Tower Corporation assigned its claim under said contract to plaintiff, and this action was commenced to recover the $100,000 with interest. The defendant rested upon plaintiff's case, and the court directed a verdict for the defendant. The grounds for this decision were stated to be: (1) That the mechanics' liens were incumbrances which it was in the power of the vendor to remove, and did not operate as a breach of defendant's contract; (2) that there could be no recovery of damages for defendant's alleged breach without an allegation in the complaint and proof on the trial of the vendee's readiness and willingness to perform.

(1) It cannot be controverted that these mechanics' liens were incumbrances which were not provided for in the contract, and furthermore, that the defendant had the ability to remove them, but did not do so. It stood on its right to tender a deed of the property thus incumbered. The attorney for the defendant stated he would give his word that he would bond them. He, however, refused to grant an adjournment for the purpose of allowing the title to be cleared. Time was by its terms made of the essence of the contract unless an adjournment should be granted, and the defendant had, by its insistence on an immediate closing and its repeated refusal of requests for an adjournment, made the very hour of the day essential to its performance. There was not even the suggestion that the purchaser could retain a sufficient sum from the purchase money as a protection against these liens. It is to be borne in mind that there was to be no covenant against incumbrances in the deed. The defendant insisted on the vendee giving up its contract right, for the contract would

be merged in the deed (*Murdock* v. *Gilchrist,* 52 N. Y. 242, 246; *Schoonmaker* v. *Hoyt,* 148 id. 425, 429), and accepting the mere oral promise of the attorney that he would bond the liens. In *Higgins* v. *Eagleton* (155 N. Y. 466), relied upon by the respondent, the objections raised at the time of closing were unfounded, but the trial court held that by reason of the existence of a mortgage upon the adjoining property, which had an easement because the beams rested in the wall of the premises to be conveyed, the vendor was unable to give a valid release. The Court of Appeals held that this objection was not made upon the law day; had it been, the vendor could have procured a proper release; and said (p. 472): " In this contract there was no express stipulation making prompt performance, or performance upon the day named, any part of the substance of the agreement. So that, manifestly, time was not of the essence of the contract."

In the instant case the objection was raised upon the law day, and demand made that the incumbrances be removed, and an offer made to adjourn the closing to permit the defendant to clear the title, all of which it refused to do.

(2) It is a well-settled rule, as stated by the learned trial justice, that the obligations of the parties to an executory contract of purchase and sale are concurrent and dependent, and there can be no recovery of damages for the vendor's alleged breach without an allegation in the complaint and proof upon the trial of the vendee's readiness and willingness to perform. The exception to the rule is equally well settled and is stated in the cases relied upon by the court and by respondent's counsel, that a formal tender and demand by the vendee is unnecessary where the vendor in advance refuses to comply with the terms of the contract, or where he has placed himself in a position where performance is impossible. (*Ziehen* v. *Smith,* 148 N. Y. 558, 561, and cases cited 562; *Vandegrift* v. *Cowles Engineering Co.,* 161 id. 435, 443.) In *Morange* v. *Morris* (3 Keyes, 48), cited with approval in *Hartley* v. *James* (50 N. Y. 38, 44), the property was incumbered by the lien of certain taxes and assessments. The court said: " By his agreement he was not only to convey a title in fee simple, but he was to convey and assure it free from all encumbrances except as therein specified, and the encumbrances

referred to were not within the exception.    The existence of the encumbrances, at the time fixed in the agreement for the execution and delivery of a deed, was a breach of the agreement on his part, which put it out of his power to perform, and excused the plaintiff from tendering payment.    *   *   *   The act of conveying the premises free from all encumbrances, was to be concurrent with that of the payment of the purchase money. The plaintiff was under no obligation to pay his money to the vendor, and trust to a remedy by action for damages in case the vendor failed to remove the encumbrances." The general language of this case has been somewhat limited and the case has been distinguished from others, but there is nothing either in the limitation or distinction that impairs the application of the principle on which the case was decided to the instant case, in which the vendor refused to remove the incumbrances and insisted on tendering a deed of the property incumbered, which if accepted with knowledge of the liens would leave the vendee no right to damages because the deed did not contain a warranty against incumbrances.    The instant action was not brought to recover damages for the breach of the contract, but to recover back a payment made on account of the purchase price, on the ground that, as the vendor was not ready at the time appointed to convey a title to the premises free from incumbrances, and refused on demand to clear the title, the vendee had exercised his right to rescind and reclaim what he had paid.    (*Bigler* v. *Morgan*, 77 N. Y. 312, 318.)    There is no allegation of damage by way of legal expenses incurred. All that is demanded in the complaint is the $100,000, paid on account of the purchase price at the time the contract was signed.

The judgment and order should be reversed, with costs, and judgment ordered for the plaintiff for $100,000, with interest from the 2d day of January, 1917, with costs.

CLARKE, P. J., LAUGHLIN and SMITH, JJ., concur; MERRELL, J., dissents.

MERRELL, J. (dissenting):

This appeal is by the plaintiff, Mary F. Roberts, from a judgment in favor of the defendant, New York Life Insurance Company, entered upon the verdict in favor of said defendant

directed by the court at Trial Term. The plaintiff also appeals from the order denying her motion to set aside the verdict and for a new trial.

The action is brought to recover the sum of $100,000 and interest, which sum was paid by the plaintiff's assignor upon the contract of sale upon its execution on January 2, 1917. The contract was between the defendant and one William C. Roberts, and by the terms of the contract in consideration of the sum of $2,400,000 to be fully paid as in the contract provided, the said defendant agreed to sell and convey to the said William C. Roberts, plaintiff's predecessor, the Madison Square Garden property. Under the terms of the contract the said sum of $100,000 was to be paid upon the execution thereof, the sum of $300,000 was to be paid thereafter and on the 1st day of March, 1917, which was the time the defendant was to execute, acknowledge and deliver to the grantee a proper deed with covenants against the grantor's acts for the conveying to said Roberts or his assigns the fee simple of said premises free of incumbrances, except taxes, assessments and water rates payable after the date of the contract, and subject also to certain bookings and leases then outstanding against the property. The final payment of $300,000 was to be made and the deed delivered at the office of George W. Hubbell at 346 Broadway, New York city, and it was further agreed that upon the payment of said $300,000 on March 1, 1917, the grantee should execute and deliver to the defendant a purchase-money bond and mortgage upon the property to secure the balance of the purchase price of $2,000,000. The contract also contained the following provision: " In case any valid defect to the title is found, and the same is rejected therefor by the purchaser, then this contract shall become void, and the said sum of One hundred thousand ($100,000) dollars shall be returned with interest."

Subsequent to the execution of the said contract it was first assigned with all rights of the grantee thereunder by said William C. Roberts to the Garden Tower Corporation, and thereafter the said contract, together with all rights accruing to the grantee and his assignee thereunder was duly assigned and transferred by the Garden Tower Corporation to the plaintiff, Mary F. Roberts.

It is the claim of the plaintiff that upon the 1st day of March, 1917, the date upon which the contract was to be performed by the payment of the $300,000 by the grantee, the execution and delivery of the deed of the property by the defendant to the said grantee and his execution and delivery of the purchase-money bond and mortgage to the grantor to secure the balance of the purchase money of $2,000,000, the grantor was unable to furnish the grantee with a valid title to said property and that by reason thereof the grantee rejected the title and deed then and there tendered by the grantor. It is the claim of the grantee and the plaintiff herein that there were outstanding upon said property upon the law day when the parties met to fulfill said contract, two mechanics' liens, both of which were filed subsequently to the execution of said contract. These liens aggregated in amount a little more than $2,500, and had been filed by contractors who had furnished lumber and materials to one Grundy holding a lease of a part of said premises and which was used in the erection of a skating rink therein for said tenant. It was claimed by the representatives of the assignee of the grantee under said contract at the time and place where said contract was to be performed, that said liens constituted a valid defect in the title of the New York Life Insurance Company, and that by reason thereof the title offered by the said company was rejected by the representatives of the grantee.

The court at the close of the plaintiff's case upon the trial directed the jury to return a verdict in favor of the defendant. A motion was made to set aside the verdict of the jury and for a new trial, which was denied by the court. No tender of performance was made by the grantee upon the rejection of title, nor did the grantee demand that the insurance company perform the contract on its part by delivering a deed of the property conveying title thereto free of incumbrances.

It appears from the opinion of the trial court that the jury was directed to find for the defendant upon the ground that the plaintiff had failed to show a tender of performance on the part of the grantee, and a demand of the grantor that it perform said contract on its part, which the court held was a condition precedent to bringing suit to recover back the

assignee's money paid at the time of the execution of the contract.

I think the reasons stated by the trial court for directing a verdict in defendant's favor are sound, and that under the authorities it was necessary for the plaintiff, before bringing suit, to prove a tender of performance on the part of the grantee and a demand that the grantor deliver the deed provided for by the contract.

Under the precise terms of this contract I do not think that the existence of the two mechanics' liens upon the property covered by the contract upon the law day thereof was a " valid defect to the title." The provision of the contract with reference to the recovery of the assignee's money is that " In case any valid defect to the title is found, and the same is rejected therefor by the purchaser, then this contract shall become void, and the said sum of One hundred thousand ($100,000) dollars shall be returned with interest."

The law seems reasonably well settled that the existence of a mechanic's lien upon property does not create a defect in the title thereto. (*Raben* v. *Risnikoff*, 95 App. Div. 68; *March* v. *Marasco*, 165 id. 348.)

*Raben* v. *Risnikoff* (*supra*) arose in the Second Department and was to recover, as in the case at bar, moneys paid to the vendor upon the execution of the contract. Mr. Justice WILLARD BARTLETT, in delivering the unanimous opinion of the court in that case, among other things, said: " It appeared that there was a mortgage of $600 upon the land, payable on demand, which was not mentioned in the contract. If the vendor had then paid this mortgage, or tendered to the vendee an amount sufficient for its payment, he might have obviated the objection. He did neither, however. The mere existence on the day when the title is to be closed of an incumbrance on the property to be conveyed, *which it is within the power of the vendor to remove*, does not constitute a breach of the contract (*Higgins* v. *Eagleton*, 155 N. Y. 466), but if the vendee *then make a tender and demand of performance*, and the vendor fails to remove the incumbrance or provide for its removal to the satisfaction of the vendee, the latter may maintain an action to recover the money paid on the agreement." (Italics are the writer's.)

The evidence in the case at bar shows that no tender of performance was made on the part of the grantee, nor did the grantee demand performance on the part of the insurance company. Indeed, it appears that upon the law day, March 1, 1917, after the attorney for the assignee of the grantee under the contract had made repeated requests for an adjournment in order to secure the necessary moneys to make up the $300,000 then payable, all of which efforts were attended by failure, as a last resort the attorney spoke of the two mechanics' liens resting against the property. It appears that the insurance company and its attorney were surprised at the information of the existence of such liens, and the attorney then stated that under the provisions of law the liens would be eliminated without delay, and the attorney for the insurance company gave his word that he would see that the property was relieved of said liens at once if the grantee would accept title to the property and perform on his part. This the grantee refused to do, insisting on a further adjournment.

The Lien Law provides for discharging mechanics' liens in several ways. (See § 19, as amd. by Laws of 1916, chap. 507;* Id. § 20.) They may be discharged by payment to the lienor of the amount of his lien and discharge of the same, or may be discharged by executing a bond with proper sureties and in an amount approved by the court. Before action is brought upon the liens they may be discharged by payment into court of the amount of the lien with interest. Thus it would seem that it was within the power of the insurance company on the *law day* itself to have gotten rid of these liens and relieved the property of incumbrances by reason thereof. But even assuming that the existence of the liens constituted a " valid defect " to the title of the property, it is entirely clear from the evidence that the title was not rejected by reason of such defect. The claim that the property was incumbered by liens made by counsel for the grantee after repeated failures to secure a continuance in order that the grantee might raise the money to make payment of the $300,000 was, I think, a mere subterfuge to enable the grantee to avoid performance of the contract. I do not think there was any

---

* Since amd. by Laws of 1920, chap. 373.— [REP.

rejection of the title of the property in good faith. As pointed out by the trial justice, there were too many ways in which these two small liens, aggregating a little more than $2,500, in this stupendous deal involving $2,400,000, could have been discharged, and whereby the purchaser might have been amply protected. Not only could the liens have been discharged as suggested and promised by the solicitor for the insurance company, but the amount thereof could easily have been withheld by the grantee from the purchase price or *pro tanto* the purchase-money mortgage might have been reduced in amount.

But even assuming that the liens constituted an invalidity of title, and that the grantee rejected the same by reason thereof, under the authorities I do not think the grantee could recover the $100,000 paid upon the execution of the contract, except upon tender of performance on the part of the grantee and a demand of the grantor of performance of the contract on its part. (*McCammon* v. *Kaiser,* 218 N. Y. 46; *Ziehen* v. *Smith,* 148 id. 558; *Higgins* v. *Eagleton,* 155 id. 466.)

Judge O'Brien said, in *Ziehen* v. *Smith* (*supra*): " The contract is not broken by the mere fact of the existence on the day of performance of some lien or incumbrance which it is in the power of the vendor to remove." And, further: " It is not alleged or claimed that the plaintiff on that day, or at any other time, offered to perform on his part or demanded performance on the part of the defendant, * * *. It is, no doubt, the general rule that in order to entitle a party to recover damages for the breach of an executory contract of this character he must show performance or tender of performance on his part."

Had the assignee of the grantee in the case at bar tendered to the insurance company upon the law day performance on the part of said grantee of said contract, tendering the $300,000 then due upon said purchase price, and had said assignee then demanded the deed from the insurance company in accordance with the terms of the contract, then the insurance company would have been required to act, and on failure to furnish such deed of the property free from incumbrances an action would lie on the part of said assignee to recover the earnest money paid upon the execution of the contract.

I think there can be no question but that the incumbrance,

such as it was, upon the property, was one which the insurance company had it within its power to remove at once. Several different courses to effect such removal were open to it, the adoption of either of which would have enabled it to have performed the contract. The payment of the $300,000 and the transfer of title and the execution and delivery of the purchase-money mortgage were all concurrent acts, each dependent upon the other. In the absence of tender of performance on the part of the assignee of the grantee and a demand of performance on the part of the grantor, I think no foundation lies either for recovery of damages for failure to perform or to recover back the part of the purchase price paid upon the execution of the contract, and which by the terms of the contract it was agreed should be regarded as liquidated damages, if the grantee failed to perform.

I think the trial court properly directed a verdict herein in favor of the defendant, and that the judgment entered thereon should be affirmed, with costs.

Judgment and order reversed, with costs, and judgment ordered for plaintiff for $100,000, with interest from January 2, 1917, with costs. Settle order on notice.