Charles Margett, J.
On May 19, 1961, Morris Kraus contracted to sell certain property located at Rockaway Beach to Paul Maslin, as purchaser, for $90,000. On June 23,1961, Maslin, in consideration of $10,500, assigned his interest in this contract to the plaintiff hy agreement dated that day. Upon signing this agreement plaintiff, pursuant to the terms thereof, paid Maslin $2,500 and an additional $2,000 was paid to Burgh, Maslin’s attorney, to he held in escrow until the closing of title. The balance of $6,000 was to he paid on or before the closing of title.
Plaintiff has brought this action in equity for the return of the $4,500 paid to Maslin and Burgh as aforesaid and the expenses incurred for title examination. Defendant Maslin (the assignor) has counterclaimed for the balance of $6,000 allegedly due under the assignment agreement.
*974 The theory upon which this action was tried is that the seller, by refusing to grant plaintiff’s request for an adjournment, made time the essence of the contract of sale and that because the seller was unable to deliver a deed in conformity with the contract of sale on the law date, plaintiff was justified in refusing the seller an adjournment in order to clear two Building Department violations of record against the subject property, and consequently is entitled to the return of its deposit.
The contract of sale, dated May 19,1961, provides in pertinent part: “All notes or notices of violations of law or municipal ordinances, orders or requirements noted in or issued by the Departments of Housing and Buildings, Fire, Labor, Health, or other State or Municipal Department having jurisdiction against or affecting the premises at the date hereof, shall be complied with by the seller and the premises shall be conveyed free of the same, and this provision of this contract shall survive delivery of the deed hereunder. The seller shall furnish the purchaser with an authorization to make the necessary searches therefor.”
Paragraph 21 (a) of the assignment, dated June 23,1961, provides that “ The Assignor represents that the attorney for Morris Kraus [seller] has this day consented that title may close on July 30,1961. The Assignee [plaintiff] agrees to close title no later than July 30,1961 unless the seller in the contract dated May 19,1961 shall request an adjournment, in which event title may be adjourned accordingly.” The following sentence was stricken from this paragraph: “However, the Assignee agrees that he will not request any adjournment beyond July 30, 1961 and that as against the said Assignee time is of the essence with respect to said July 30,1961.”
Plaintiff’s sole witness was its attorney who testified that on July 21,1962, he telephoned the attorney for the seller and was refused an adjournment of the law day. The adjournment was requested because the plaintiff had not received the title report. He further testified that the attorney for the seller, in refusing the adjournment, claimed that his client had commitments for the use of the balance of the purchase price and had to have it on the date set for closing title. On July 25, 1961, plaintiff received the title report which contained a notation to the effect that there were three Building Department violations. It is to be noted, however, that only two were concerned with the subject property.
On July 30, 1961, the date set for the closing of title, plaintiff’s attorney and the president of plaintiff corporation appeared at the office of the attorney for the seller. The presi *975 dent of plaintiff inquired about the violations and was advised that they could not be removed in time but the seller was prepared to deposit $1,000 in escrow to secure their removal. Plaintiff’s attorney testified that “we wanted to have title closed then and there. We were ready to close; and that if they were not ready, we would not agree to any escrow arrangement for the removal of the violations at some other time. I pointed out that they had made time of the essence in connection with the adjournment.”
On cross-examination, this witness testified that the violations were not initially discussed at the closing; rather, the parties first proceeded to compute the various adjustments. It was only after these computations were made that the violations were discussed.
On redirect examination, this witness testified that the sentence omitted from paragraph 21 (a) as above quoted was stricken at his insistence. In this respect he testified: “ But I did not want to feel that my client was barred from asking for an adjournment even beyond that July 30 date. Therefore, I insisted that it be struck out.” At this point the court inquired of the witness whether by striking out this sentence either party could then request an adjournment, if there were reason for the same. The witness replied in the affirmative.
The attorney for the seller testified that at the closing the parties first examined the proposed purchase-money mortgage and deed and then proceeded to the adjustments. After arriving at an adjusted balance due the seller, the president of plaintiff corporation inquired about the violations, at which time he was advised that it was impossible to obtain dismissal notices of the violations in time for the closing. The seller, however, offered to deposit $1,000 in escrow to guarantee that the violations would be removed. Thereupon plaintiff’s president insisted that he be given a deed clear of the violations objected to. The seller then requested an adjournment for the purpose of removing these violations. This was refused by plaintiff’s president.
With respect to the plaintiff’s telephonic request for an adjournment on July 21, this witness testified that “ I asked him why he wanted the adjournment. He said that he had not as yet received the title report. And I told him that his request for an adjournment was slightly premature, since title was not scheduled to close for another eleven days, and that he should call his title company and find out why there has been the delay in obtaining the title report and to contact me further about that.” On cross-examination, the witness stated that he “ might *976 well have ” stated to the plaintiff’s attorney at that time that he could not adjourn the closing because his client needed the money.
It is to be noted that the violations in question were minor in nature. There is testimony to the effect that one of the violations consisted of improper glass in two transoms due to the absence of wire therein and that the other violation was concerned with the failure to obtain a permit for the erection of a 4-foot by 10-foot sign belonging to Kent Cleaners, one of the tenants of the subject property.
The seller testified that approximately six months prior to the date of the contract of sale, he, himself, replaced the improper glass with wire glass at a cost of $2.25 and that he had advised the Building Department to that effect. Nevertheless, this violation was not removed from their records. Insofar as the Kent cleaning sign was concerned, a permit was obtained subsequent to the closing date and a dismissal notice of this violation was obtained shortly thereafter. There is testimony that the Kent sign “ was affixed by way of hooks at the top and slid into a bracket on the bottom” and could be removed “merely by obtaining a ladder, going up on top of the ladder, and unhooking it, * * • * and then removing it from the building ” at a cost of approximately $15 to $20. There is also uncontradicted testimony that plaintiff knew of the nature and extent of these violations.
Plaintiff concedes that by the terms of the contract of sale, dated May 19, 1961, and the assignment of that contract dated June 23,1961, time was not of the essence. This is also apparent from reading paragraph 21 (a) of the assignment and the testimony of plaintiff’s witness that by excising the sentence from that paragraph either party was at liberty to request an adjournment. It is, however, plaintiff’s contention that time was made of the essence by the claimed refusal by the seller’s attorney to grant an adjournment when requested to do so over the telephone on July 21.
The court finds that there was not an unequivocal declination on the part of the seller’s attorney to grant an adjournment. It is plausible, however, that plaintiff’s attorney may have assumed the contrary. In any event, the court is of the opinion that even if the declination were in fact unequivocal it would not, in the circumstances here presented, have the effect of making time of the essence of the contract. While time can be made of the essence by giving notice to that effect, where the contract does not expressly state time to be of the essence (Taylor v. Goelet, 208 N. Y. 253, 259), the notice required must be reasonable. In *977 Ballen v. Potter (251 N. Y. 224, 228-229), the Court of Appeals stated: “ [T]he mere designation of a particular date upon which a thing is to be done does not result in making that date the essence of the contract * * *. One claiming that element to be essential is bound, before he can support such a claim, to serve a clear, distinct and unequivocal notice fixing a reasonable time within which the thing must be done.” The court held in Bailen that the statement by the attorney for the buyer was not such notice within which the seller must perform so as to make time the essence of the contract. Similarly, in the case at bar, it cannot be held that the claimed refusal by the seller’s attorney to grant an adjournment was such reasonable notice as to make time of the essence.
Plaintiff relies upon Roberts v. New York Life Ins. Co. (195 App. Div. 97, affd. 233 N. Y. 639). There, the Appellate Division, in reversing the trial court, held that by its terms time was of the essence of the contract and that the seller, having refused the purchaser’s request for a postponement, the latter was not bound to accept the promise of the seller’s attorney that the liens would be bonded.
In the case at bar, however, time was not of the essence according to the terms of the contract, and the seller, rather than refusing a postponement, requested a reasonable time within which to clear the objections to title and offered to place $1,000 in escrow to guarantee their removal. Surely, in view of the minor nature of the violations, one of which had already been removed, although still appearing on the record, the offer to post $1,000 in escrow was adequate to assure the removal of the other. Under these circumstances the seller should have been allowed a reasonable time within which to remove the remaining violation. (See Urbis Realty Co. v. Globe Realty Co., 201 App. Div. 533.)
Plaintiff does not contend, nor can it be said, that the title was rendered unmarketable owing to the two minor violations of record. (See e.g., Woodenbury v. Spier, 122 App. Div. 396; Manhattan Life Ins. Co. v. Wall Investing Corp., 131 Misc. 363, affd. 223 App. Div. 833; Salsone v. Sanzone, 212 N. Y. S. 2d 492.)
Upon all of the evidence the court is of the opinion and finds that plaintiff’s refusal to grant the seller a brief adjournment in order to remove the violations was unreasonable and motivated by reasons other than the existence thereof. Were plaintiff willing and anxious to perform its contract it would ‘ ‘ in the exercise of that prudence which businessmen ordinarily bring to bear upon such transactions ” have accepted the deed with the escrow agreement or would have adjourned the closing date *978 for a reasonable period of .time. (Todd v. Union Dime Sav. Inst., 128 N. Y. 636, 639-640.)
With respect to the counterclaim interposed by defendant Maslin, paragraph 10 of the assignment provides: “ 10. In the event of any default on the part of the Assignee or the Assignee’s assigns to fully perform said contract of purchase and sale in accordance with the terms, provisions and conditions thereof or of any term or condition of this agreement, not due to any default or failure on the part of the seller then and in such event the entire sum of Ten Thousand Five Hundred ($10,500.00) Dollars shall be deemed liquidated damages and the sum of Two Thousand Five Hundred ($2,500.00) Dollars paid to the Assignor shall be retained by him. The escrow fund of Two Thousand ($2,000.00) Dollars shall be paid by the escrow agent to the Assignor and the Assignee shall upon demand pay over to the Assignor the balance of Six Thousand ($6,000.00) Dollars.”
The court is of the opinion that under the circumstances it would be inequitable to permit the liquidated damages called for pursuant to the above-quoted paragraph. ‘ ‘ Liquidated damages constitute the compensation which, the parties have agreed, must be paid in satisfaction of the loss or injury which will follow from a breach of contract. They must bear reasonable proportion to the actual loss. (Seidlitz v. Auerbach, 230 N. Y. 167.) Otherwise an agreement to pay a fixed sum, upon a breach of contract, is an agreement to pay a penalty, though the parties have chosen to call it ‘ liquidated damages, ’ and is unenforceable.” (Wirth & Hamid Fair Booking, Inc., v. Wirth, 265 N. Y. 214, 223.) Here the purchase price for the assignment was $10,500. To allow that sum under the guise of “ liquidated damages ” would be grossly disproportionate “ to the actual loss ” of which there is no proof.
Moreover, it is to be noted that such liquidated damages are to be paid where the default of the buyer is ‘ not due to any default or failure on the part of the seller.” Here, however, there was not such strict compliance on the part of the seller that would warrant additional damages.
During the trial plaintiff’s second cause of action, for money damages, was dismissed on the merits upon consent of the parties.
Accordingly, judgment is granted in favor of the defendants dismissing the complaint on the merits and in favor of the plaintiff dismissing the counterclaim on the merits. No costs.