ABE V. EPSTEIN, Plaintiff, *v.* MERLIN J. BOSSARD, Defendant.

Supreme Court, Trial Term, Steuben County, June 29, 1954.

*G. Orcutt Brown* and *John W. Hollis* for plaintiff.

*Nicholas J. Changose* for defendant.

J. C. O'Brien, J. Plaintiff, a licensed real estate broker, was retained by defendant to sell defendant's dairy, including some twelve acres of land and the milk business thereon located. Plaintiff obtained two young men as prospective purchasers, who proposed to buy the dairy as partners. After a series of meetings and negotiations, it was orally agreed between the defendant owner and the purchasers that the latter would buy on the price and terms at which the property had been listed with the plaintiff, namely $50,000, payable $1,000 in cash at the time of the execution of a written contract, $9,000 in cash on the date of closing of the transfer, and the balance, namely $40,000, by the execution and delivery of a purchase-money mortgage for that sum. No written contract was signed by the defendant and the purchasers.

After the essential terms of the contract had been agreed upon, but before the purchasers had definitely agreed to buy, the purchasers, who were young men, and admittedly had no capital of their own, went to the Bath National Bank and applied for a loan of $10,000 so that they could make the cash payment required. They testified that the president of the bank orally told them that such loan would be granted if both of their fathers would cosign a note for the sum borrowed. So far as appeared from the testimony given on the trial, there was no discussion between the bank officer and the purchasers as to the rate of interest which the note would bear, the amount of installment payments required, the maturity date of the note or other details and conditions. On the occasion of one of their visits to the bank the purchasers were accompanied by the father of one of them, namely Mr. Ketch, who orally agreed to cosign the note, and he testified upon the trial to that effect. The other purchaser testified that his father, Mr. Watkins, had orally agreed with the witness to cosign the note. The bank president thereupon orally told the purchasers that they could have the money when they needed it.

Thereupon the purchasers informed the defendant that they were ready to buy the property. The defendant referred them to his attorney who was to draft a written agreement for the purchase and sale of the property. In the course of working out the agreement, the terms and conditions previously agreed upon were so changed by the defendant and his attorney that the purchasers were unwilling to sign the written agreement proposed and no sale was ever consummated.

Plaintiff in this action bases his claim for commissions on the theory that he performed his contract by producing purchasers, ready, able and willing to buy defendant's property, and purchasers who had agreed upon all the essential terms of the sale. Plaintiff asserts that the sale fell through solely because of the defendant's action in materially altering the terms previously agreed upon.

The case was tried before a jury and eight questions were submitted to them for answer. The jury found that the minds of the parties met on all of the essential conditions of the proposed sale including terms of payment; that defendant did accept the two purchasers as purchasers of his business and real property; that defendant agreed to accept the purchasers as the only makers of the purchase-money bond and mortgage for $40,000; that the purchasers were ready, able and willing to consummate the sale; that defendant altered or changed the terms of sale which he had previously agreed upon with plaintiff and purchasers; that the proposed sale failed of consummation through the fault of the defendant; that plaintiff performed all the conditions of his contract with defendant by him to be performed.

Defendant moved for a nonsuit and dismissal of the complaint. After the jury's verdict defendant also moved to set aside the verdict of the jury and plaintiff moved for a directed verdict.

We consider now the question as to whether these two young purchasers were " able " to perform. In order to establish the fact that a purchaser is " able " apparently it is not necessary to prove that he had the necessary cash actually on hand, although some statements to the contrary appear in the books. It is proper to submit the question of his ability to a jury as a question of fact, provided the evidence justifies a conclusion that the proposed purchaser would have been able to purchase even though he did not have the cash upon the date set for the sale. (*Mengel* v. *Lawrence*, 276 App. Div. 180.)

The problem of the financial ability of a purchaser was recently discussed in an opinion by Judge VAN VOORHIS then in the Appellate Division, First Department (*Globerman* v. *Lederer*, 281 App. Div. 39, 42–43). He writes: " It is not necessary to follow a particular formula in order to establish financial ability of a prospective purchaser to meet the price, but there must be some tangible evidence from which a jury could conclude that he would have had the ability. Some facts must be adduced, beyond the mere conclusion of the prospective purchaser * * * Of course, evidence would have been

relevant that at the expected time for closing, funds had been made available to the purchaser from his wife, associates or lending institutions.'' Also (p. 42): '' It was not enough that [purchaser] stated that he could have bought the property. At least some details had to be shown, from which the jury could have inferred that he possessed the necessary financial ability. He testified * * * that Public National Bank would have loaned him from $150,000 to $175,000 * * * that he had expected Mr. Feinberg to pay one quarter of the $300,000 cash. * * * It does not appear that this bank or Feinberg had made any binding commitment to advance these funds.''

The court then ordered a new trial with the suggestion that the attorneys and the trial court question the prospective purchaser more sharply as to his financial ability.

The tangible evidence submitted to the jury in this case on the question of the financial responsibility of the two prospective purchasers, has been already mentioned and consisted of their testimony that they had received an oral commitment from the president of the Bath National Bank for $10,000 provided that both of their fathers would cosign the note, and the testimony by one of the fathers, whose financial ability appears to be unquestioned, as to his conversation with the bank president, and his (the father's) agreement to act as cosigner on the note for $10,000. The other parent did not testify.

There certainly was no '' binding commitment '' in the sense of a written agreement by the bank which irrevocably bound it to loan the money. Concededly the bank could have changed its decision; also either of the fathers could have refused to sign the note. Accordingly it does not appear from the testimony now in the record that the purchasers had a legally enforcible agreement with the Bath National Bank to loan them the required funds.

The evidence as to the willingness of the Bath National Bank to make the loan came only from the two purchasers and the father of one of them. They were permitted to testify to the oral statement by the president that the bank would loan them the money. No officer of the bank was called as a witness.

Defendant's attorney objected to the testimony as to oral statements made by the president of the bank and his oral promise to advance the funds. Assuming, without deciding, that these objections were properly overruled, and that such testimony was admissible, we still feel that this evidence was not sufficient to establish the financial ability of the purchasers, so

as to justify a jury in finding that the purchasers were " able " to perform. Accordingly the motion of the plaintiff for a directed verdict in his favor is denied with an exception.

It may be that upon a new trial the president or some other officer of the bank will testify and will be subjected to cross-examination as to his promise and the extent to which it could have been relied upon by the purchasers, it being remembered that the question as to what extent the bank was committed to make the money available to the purchasers is of considerably greater consequence than the question as to whether or not the president made the oral statement attributed to him by the proposed purchasers in their testimony upon the trial. Upon a new trial it may be that some written evidence will be available. Perhaps this additional evidence, supplemented by the testimony which was given upon the same subject on the first trial, may more clearly develop the subject of the financial ability of these two purchasers to make the cash payment required. For the reason that such additional proof may be available and justice so requires, defendant's motion for a nonsuit and dismissal of the complaint is denied with an exception to him.

However, the verdict of the jury and their answer to Question No. 4, to the effect that the purchasers were able to consummate the sale, is contrary to the evidence and for that reason there should be a new trial.

Defendant's motion to set aside the verdict and for a new trial is granted. Plaintiff's motion for a directed verdict is denied with an exception to him.

The attorney for the defendant will submit a proposed order, approved as to form by the attorney for the plaintiff. If such approval cannot be secured, order may be settled on five days' written notice.