285 F.2d 318
 Sigurd SCHOLLE, Plaintiff-Appellant,
v.
CUBAN-VENEZUELAN OIL VOTING TRUST, Daniel E. MacLean as
Trustee of the Cuban-Venezuelan Oil Voting Trust,
Daniel E. MacLean, individually, and
Warren W. Smith, Defendants-Appellees.
 No. 31, Docket 26055.
 United States Court of Appeals Second Circuit.
 Argued Sept. 28, 1960.
Decided Dec. 16, 1960.
 
 Benedict Ginsberg, New York City, for plaintiff-appellant.
 A. Donald MacKinnon, New York City (Edward J. Reilly, Jr. and Milbank, Tweed, Hope & Hadley, New York City on the brief), for defendants-appellees.
 Before LUMBARD, Chief Judge, and TUTTLE* and FRIENDLY, Circuit judges.
 LUMBARD, Chief Judge.
 
 
 1
 Plaintiff-appellant, a citizen of New York, brought this action for breach of an agreement giving him an option to purchase stock. The option, granted by the defendant voting trust, organized under the law of Cuba,[1] in consideration of past services, gave plaintiff, Sigurd Scholle, the right to purchase 50,000 schares of its stock at a price of $1.00 per unti 'for the duration of the trust, which will expire June 1, 1955.' On November 15, 1954, four months after the option had been granted, the term of the voting trust was extended for ten years beyond the original expiration date. Plaintiff did not appempt to exercise his option until after June 1, 1955, but he contended thereafter, contrary to the voting trust's position, that his power to accept continued until the termination of the trust as extended. The court below was of the opinion that the option agreement remained in effect after June 1, 1955[2] and ordered the trial to proceed first on the issue of whether Mr. Scholle could have paid the $50,000 for the stock if the voting trust had been willing to deliver it. Viewing plaintiff's evidence as insufficient since it did not establish that he had the money on hand or had completed formal arrangements to obtain it, the district court directed a verdict for defendant. We hold that the evidence was sufficient to send the case to the jury and, therefore, reverse the disposition of the court below and remand the cause for a new trial.
 
 
 2
 I. The plaintiff had only to show that he intended to and was able to perform.
 
 
 3
 The voting trust contends on appeal that the verdict in its favor should be upheld since the agreement called for a formal tender and none was made.[3] Since the voting trust had made clear that tender if made would have been refused its contention is meritless. Acts made futile by the breaching party are not a prerequisite to recovery by the party claiming to have been wronged. Strasbourger v. Leerburger, 1922, 233 N.Y. 55, 60, 134 N.E. 834; Heller & Henretig v. 3620-- 168th Street, 2d Dept. 1949, 274 App.Div. 1007, 84 N.T.S.2d 767.[4]
 
 
 4
 The party wronged must show, however, that the breach caused his loss. To do this he must prove that he intended to and was able to perform when his performance was due. Roberts v. New York Life Insurance Co., 1st Dept. 1921, 195 App.Div. 97, 186 N.Y.S.2d 422, affirmed, 1922, 233 N.Y. 639, 135 N.E. 951; Globerman v. Lederer, 1st Dept. 1952, 281 App.Div. 39, 117 N.Y.S.2d 549.
 
 
 5
 II. The evidence of intent to perform and ability to perform.
 
 
 6
 The rise in the price at which Cuban-Venezuelan Oil Voting Trust units sold on the American Stock Exchange during the spring and summer of 1956, made plaintiff's option, if valid, very valuable. Accordingly, in late August and early September when the price fluctuated between 2 3/8 and 2 7/8 ($2.38 and $2.88), Mr. Scholle wrote letters to the trust, its president, and to a trustee, in each of which he requested instruction on where to deposit the $50,000 and stated that he 'hereby exercise(d)' the option.
 
 
 7
 Mr. Scholle admitted that at no time did he have $50,000 on hand. Indeed, his only showing of liquidity was the possession of 9,500 units of the voting trust's stock which, according to the testimony of a stockbroker, could have been sold in late August and early September of 1956 for an aggregate price of $23,750. Plaintiff made no formal arrangement to raise the difference between that sum and $50,000, but maintained that he could easily have borrowed the money, A stockbroker testified that had he been approached in August 1956, he would have advanced thirty percent of the then market value of the stock covered by the option, and that at a price of 2 1/2 this would have yielded $37,500.[5]
 
 
 8
 The plaintiff himself testified that Lincoln Valentine, deceased at the time of the trial but a large stockholder of the voting trust in August of 1956, had offered at that time to lend him a sufficient number of shares to provide collateral for a loan of the necessary amount if plaintiff decided to exercise the option. He also testified that his brother Julian, who was alive and in the jurisdiction at the time of trial, had said he would, if asked, loan $25,000 to help pay for the stock.[6] In both cases the testimony was stricken as heresay, Both rulings were erroneous.
 
 
 9
 The statements should have been admitted, under the 'state of mind' exception to the hearsay rules, to establish the truth of what was said and should also have been admitted to prove circumstantially that the speaker would help the plaintiff in a time of financial need. Used in either way, the statements were relevant since they support plaintiff's claim that he could have borrowed the money if defendant had been willing to honor the option. Obviously, this is so when the evidence is used directly to establish the truth of what was said. Circumstantially, the statements tended to show that a relationship existed between plaintiff and the speakers that made it likely that they would have loaned the money if asked.
 
 
 10
 Since the statements were relevant, they should have been admitted unless barred by some exclusionary rule. The court below excluded the evidence as hearsay, and no other eason for exclusion has been suggested. But the hearsay rule does not bar admission of the statements used circumstantially, since, when so used the primary focus of inquiry is whatever inferences can be drawn from the fact that the words were spoken and not the truth of what was said. Cf. Hooper-Holmes Bureau, Inc, v. Bunn, 5 Cir., 1947, 161 F,2d 102, 106; Loetsch v. New York City Omnibus Corp., 1943, 291 N.Y. 308, 52 N.E.2d 448. Moreover, even though the hearsay rule normally excludes out-of-court statements used to establish the truth of what was said, it should not have been applied in this case to exclude this evidence used in this way because the need for cross-examination and jury observation of the out-of-court speakers was minimized by the strong probability that the words if spoken were true. See generally McCormick, Evidence 268;The statements were allegedly made before it was clear that the money would not be needed. Netither speaker would be likely to want to create an expectation which, if frustrated, would exacerbate relations with borther or business associate. On the other hand, if such witnesses were to repeat their statements at trial, their motive to falsity would be great since their statements would not obligate them to act, and the benefits from cross-examination and jury observation at trial would be minimized since the testimony would realte to past intent, a matter peculiarly lacked within their minds. Under these circumstances, the evidence designed to show the state of mind of the speakers should have been admitted. See 6 Wigmore, Evidence, 1714, 1725 (3rd Ed.).
 
 
 11
 III. The evidence was sufficient.
 
 
 12
 The trial court held that plaintiff's proof, including that excluded as hearsay, was insufficient since he did not have the money and had not secured formal commitments to obtain it. Such proof would more clearly establish ability to perform than did plaintiff's proof that his brother and Valentine had offered help or that a broker would, if asked, have made a loan. To require people in plaintiff's position, however, to bind themselves to borrow money for which they have no immediate need serves no purpose. The plaintiff should only have been required to show that he could have obtained the funds. His evidence that he could have done so was sufficient to warrant sending the case to the jury.
 
 
 13
 Plaintiff's letter to the trust asking where to deposit the $50,000 and stating that he exercised his option bound him to perform and thus clearly was sufficient evidence of his intent to perform to go to the jury.
 
 
 14
 The New York cases that seem to support the view of the court below are distinguishable. The proof needed to show ability varies with the nature of the contract and all the surrounding circumstances. In this case, if defendant had not asserted the option's invalidity, Scholle could have obtained stock worth $125,000 by the payment of $50,000. It seems highly likely that financial assistance could have been arranged. Compare Strasbourger v. Leerburger, 1922, 233 N.Y. 55, 134 N.E. 834 where there was no showing of the value of performance. In this case, morever, it was clear long before plaintiff sought to act, that the defendant was not willing to perform. Thus this case is markedly different from Globerman v. Lederer, 1st Dept. 1952, 281 App.Div. 39, 117 N.Y.S.2d 549 and Epstein v; Bossard, Sup.Ct. Steuben Co. 1954, 206 Misc. 48, 131 N.Y.S.2d 709, affirmed 4th Dept. 1955, 286 App.Div. 920, 143 N.Y.S.2d 659, where the time of default coincided with the time for performance by the party whose ability and intent to perform were questioned.
 
 
 15
 Reversed and remanded.
 
 
 
 *
 Sitting by designation
 
 
 [1]
 There were two individual defendants. One was a citizen of Connecticut and the other of Venezuela
 
 
 [2]
 A question upon which we express no opinion. The agreement is sufficiently ambiguous so that the parol evidence rule would not bar evidence of the parties' intent. At the pre-trial hearing both parties indicated that they had such evidence
 
 
 [3]
 The parties have assumed both below and here that formal tender was intended
 
 
 [4]
 Both parties assumed that New York law should determine the issues argued on appeal. Plaintiff was a New York resident and apparently was in New York when granted the option. The defendant did most of its business in Cuba and issued the option there. It was not clear where plaintiff performed his services. At the trial, experts in Cuban law testifiled for both parties. Their testimony conflicted on the question of whether Cuban law required tender despite a clear indication that it would be ineffectual. The trial court's dismissal, however, did not purport to rely upon a requirement of Cuban law more stringent than New York's
 
 
 [5]
 The defendant argues that this testimony should bd disregarded since the securities covered by the option were not registeered with the S.E.C. and since the stockbroker testified that had he known this he would not have accepted the option as collateral. Since the district court eventually held all of plaintiff's proof insufficient because no formal arrangement to obtain cash was in fact made, in never decided whether registered securities were in fact required by the agreement
 
 
 [6]
 On the following day, the plaintiff's brogher appeared to testify personally to his past statement. He was not heard. Of course it is clear from what we hold infra that his testimony should be received upon any retrial