**LEAWOOD BANCSHARES INC.,**
**CrossFirst Holdings, LLC,**
**Plaintiffs,**

v.

**ALESCO PREFERRED FUNDINGS X, LTD., Defendant.**

**No. 10 Civ. 5637(JSR).**

United States District Court,
S.D. New York.

Oct. 14, 2011.

---

David Robert Baum, Nick Tardif, Benito Delfin, Jr., SNR Denton US LLP, New York, NY, for Plaintiffs.

John Gribbin Hutchinson, Algeria Selima Aljure, Martin Brandon Jackson, Sidley Austin LLP, New York, NY, for Defendant.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

On July 23, 2010, plaintiffs Leawood Bancshares Inc. ("Leawood") and Cross-First Holdings, LLC ("CrossFirst") filed this breach of contract action against defendant Alesco Preferred Fundings X, Ltd. ("Alesco"), alleging that Alesco breached a letter agreement between Alesco and Leawood by failing to sell certain trust preferred securities (the "TruPS") to Leawood. Furthermore, according to the complaint, Alesco, by failing to redeem the TruPS, prevented the closing of a separate transaction between plaintiff Leawood and plaintiff CrossFirst, thus also causing harm to plaintiff CrossFirst. Prior to the conclusion of discovery, both parties filed motions for summary judgment, but the Court denied both motions based on its conclusion that the letter agreement was ambiguous and that further discovery was required in order, *inter alia*, to determine its meaning. Now that discovery is complete, the parties have again filed motions for summary judgment. Having carefully reviewed the summary judgment record, the Court now grants plaintiffs' motion for

partial summary judgment, concluding that (1) defendant Alesco breached the letter agreement and (2) CrossFirst was a third party beneficiary of the letter agreement.

By way of background, plaintiffs Leawood and CrossFirst are registered bank holding companies incorporated under the laws of Kansas. Prior to June 30, 2010, Leawood was the sole shareholder of non-party T & C Bank. Defendant's Local Rule 56.1 Statement in Support of its Cross–Motion for Summary Judgment ("Def. 56.1") ¶ 7; Plaintiffs' Response to Defendant's Local Rule 56.1 Statement ("Pl. Resp. 56.1") ¶ 7.[1] Defendant Alesco is a foreign entity organized under the laws of the Cayman Islands and was managed by non-party Cohen & Company Financial Management, LLC ("Cohen") from March 15, 2006 until July 29, 2010. Plaintiffs' Statement Pursuant to Local Rule 56.1 Statement ("Pl. 56.1") ¶¶ 1–2; Defendant's Response to Plaintiffs' Statement Pursuant to Local Rule 56.1 ("Def. Resp. 56.1") ¶¶ 1–2.

On September 30, 2005, Leawood issued a junior subordinated debt security (the "Note") to Leawood Bancshares Statutory Trust (the "Trust"). The Note evidences loans by the Trust to Leawood, to be funded by the proceeds of the issuance by the Trust of trust preferred securities (the "TruPS") in the original liquidation amount of $4,000,000. Def. 56.1 ¶¶ 1–2. The TruPS bear interest at 6.389% per year until September 15, 2010, at which point the interest rate becomes variable. Pl. 56.1 ¶ 8. Accrued interest must be paid quarterly, but the payable interest may be deferred for a limited period of time under certain circumstances. Id. ¶ 9. The TruPS are due on or before December 15, 2035. Id. ¶ 10.

In connection with the sale of T & C Bank (the "Asset Contribution Transaction"), CrossFirst Holdings, LLC, and its subsidiary, CrossFirst Bank, executed a written agreement with Leawood and T & C Bank (the "Asset Contribution Agreement") on or about November 18, 2009. Pl. 56.1 ¶ 18. The Asset Contribution Agreement provides that Leawood would transfer all of the common stock of T & C Bank to CrossFirst in exchange for a contingent equity interest in CrossFirst. Id. ¶ 20.

Section 7.18 of the Asset Contribution Agreement provides that Leawood shall redeem the TruPS prior to the closing of the Asset Contribution Transaction:

> Prior to Closing, [Leawood] shall redeem ... its obligations outstanding under that certain Indenture dated December 30, 2005 pursuant to which [Leawood] issued $4,124,000 of ... [TruPS], with such [TruPS redemption] to be at a minimum discount of seventy-five (75%) of the par value of the [TruPS] or at such other discount as [CrossFirst] determines is appropriate in its sole discretion. Any prepayment or brokerage fees paid in connection with the [TruPS] shall be paid by [Leawood].

*See* Asset Contribution Agreement § 7.18.

Section 9.2.(j) of the Asset Contribution Agreement confirms that the redemption of the TruPS was supposed to take place prior to the closing of the Asset Contribution Transaction:

> Conditions of [CrossFirst] Parties' Obligations. Each and every obligation of the [CrossFirst] Parties to be performed in connection with this Agreement is subject to the satisfaction prior to or on the Closing Date of the following condi-

---

1. All citations to a party's statement of undisputed facts made pursuant to Local Rule 56.1 incorporate the corresponding paragraphs of the opposing party's response.

tions, unless waived in writing by the [CrossFirst] Parties ... (j) the [TruPS] Redemption has occurred.

*See* Asset Contribution Agreement § 9.2.

On December 30, 2009, Leawood sent Cohen a letter addressed to Sam Hillier, a Cohen employee from October 2004 until September 2010, proposing terms for the sale of the TruPS (the "TruPS Transaction"). Pl. 56.1 ¶ 25. On January 4, 2010, Mark Wickersham at the law firm Hunton & Williams LLP sent a copy of the Asset Contribution Agreement to Alesco, care of Cohen. Pl. 56.1 ¶ 39. The January 4, 2010 cover email from Leawood's counsel stated:

> Per your request, I've attained and attached to this message: 1) financials as of 12/31 (updates to the table attached to the offer letter) and 2) the Asset Contribution Agreement. Section 7.18 of the [Asset Contribution Agreement] contains the requirement of the TruPS purchase/exchange.

Pl. 56.1 ¶ 41.

On or about March 1, 2010, Leawood and Alesco entered into a letter agreement, which memorialized the parties' agreement with respect to a potential sale of the TruPS from Alesco to Leawood (the "Leawood/Alesco Agreement"). *Id.* ¶ 100. The Leawood/Alesco Agreement provides that "Leawood hereby agrees to purchase from Issuer [Alesco], and Manager [Cohen], for and on behalf of Issuer, hereby agrees to sell to Leawood, the TruPS for an aggregate amount of $1,000,000 cash. ('The Purchase Price')." *Id.* ¶ 101. Alesco knew that CrossFirst would be providing the $1,000,000 purchase price to redeem the TruPS under the Leawood/Alesco Agreement. *Id.* ¶ 102.

Paragraph 2 of the Leawood/Alesco Agreement (which is the key provision that is in dispute in this case) provides:

> Leawood shall pay the Purchase Price to Issuer at the closing of its pending Asset Contribution transaction (the "Asset Contribution") with CrossFirst Holdings, LLC ("CrossFirst"). Closing will occur no later than thirty days following the receipt by CrossFirst of approval by the Board of Governors of the Federal Reserve System and the Office of the State Bank Commissioner of Kansas (the "CrossFirst Approval") for its Change of Control Application relating to CrossFirst's acquisition of Leawood and the Transaction (the "Change of Control Application"); provided, however, that closing of the Transaction shall not occur later than June 30, 2010 (the "Closing Date"). The only preconditions to Leawood's delivery of the Purchase Price to Manager and Issuer's delivery of the TruPS to Leawood is [sic] the CrossFirst Approval and the subsequent closing of the Asset Contribution. Leawood will provide notice to Manager on the same day when the CrossFirst Approval is received (the "Leawood Notice"). The Leawood Notice will contain, at a minimum, a copy of the CrossFirst Approval and the anticipated Closing Date.

Leawood/Alesco Agreement ¶ 2.

In entering into the agreement, Alesco represented and warranted that it had "the requisite power and authority to enter into [the Agreement] and perform its obligations hereunder." Pl. 56.1 ¶ 105. Investor approval is not listed as a prerequisite to closing the TruPS Transaction. *Id.* ¶ 107. In order to make any modifications to the Leawood/Alesco Agreement, the parties would have to execute a written agreement signed by both Leawood and Alesco. Here, it is undisputed that Leawood and Alesco never signed a written agreement to modify, change, or cancel the Leawood/Alesco Agreement. *Id.* ¶¶ 110, 117.

On February 26, 2010, CrossFirst submitted to the regulators its final Change of Control Application, which attached the fourth draft of the Leawood/Alesco Agreement. *Id.* ¶ 119. The Change of Control Application described the TruPS redemption and stated:

> Section 7.18 of the Asset Contribution Agreement provides that prior to closing, [Leawood] will redeem the [TruPS] at a minimum discount of 75% of the par value or such other discount as Applicant determines is appropriate in its sole discretion. [Leawood] has successfully negotiated a 75% discount and is in the process of finalizing a Letter Agreement with the issuer of the [TruPS] to redeem the $4,000,000 of [TruPS] and extinguish all obligations under the [TruPS].

*Id.* ¶ 120.

On March 3, 2010, the Change of Control Application was supplemented with an executed copy of the Leawood/Alesco Agreement. On April 19, 2010, the Federal Reserve Bank approved CrossFirst's Change of Control Application. *Id.* ¶ 122. On May 6, 2010, the Kansas Bank Commissioner approved the Asset Contribution Transaction. *Id.* ¶ 124. On April 20, 2010, Leawood's counsel sent an email to Cohen that attached the April 19 letter from the Federal Reserve Bank of Kansas City approving the sale of T & C Bank from Leawood to CrossFirst. Leawood's counsel wrote that "[t]his email is to serve as the Leawood Notice pursuant to Section 2 of the Letter Agreement, dated March 1, 2010, between Leawood and Alesco" and requested that Alesco "deliver all of the TruPS to U.S. Bank National Association . . . on May 7, 2010." Def. 56.1 ¶ 29. The April 20 email did not include notice of regulatory approval of the sale of T & C Bank from Leawood to CrossFirst from the Office of the State Bank Commission of Kansas because such approval had not been obtained as of that date. Def. 56.1 ¶ 30.

On March 26, 2010, Daniel Cohen, the principal of Cohen, learned that Hildene had inquired about Leawood. Cohen then emailed Hillier asking: "Any way to provoke an event of default?" Delfin Decl., Ex. Q. In response to Cohen's email, Hillier responded: "There is no allegation of default." Delfin Decl., Ex. Q. On April 20, 2010, Cohen sent another email to Hillier, asking: "Can we consult a[ ] lawyer to see if there is anyway [sic] out?" Delfin Decl., Ex. R.

On May 5, 2010, Hildene objected to the sale of the TruPS and Hillier viewed the objection from Hildene as a "closing hurdle." Pl. 56.1 ¶ 132. On May 6, 2010, CrossFirst received notice of regulatory approval by the Office of the State Bank Commission of Kansas, but this notice was not provided to Alesco until May 19, 2010. Def. 56.1 ¶ 35. On May 7, 2010, Hunton & Williams wrote Cohen seeking "confirmation that Cohen is prepared to fulfill its obligations under the Agreement and to close the transaction today." Pl. 56.1 ¶ 133. Leawood's counsel stated that if Cohen was unable to close the transaction today, Leawood would deem Cohen's nonperformance to be a breach of the agreement. Def. 56.1 ¶ 31. Leawood admits that the attempt to schedule a May 7, 2010 closing was an error because, as of April 20–the date that Leawood scheduled a closing date of May 7, 2010–Leawood did not have all of the required regulatory approvals. Pl. Resp. 56.1 ¶ 31. On May 13, 2010, Hunton & Williams sent an email to Hillier, copying CrossFirst, to which Hillier responded that Cohen "would be in a position by the close of business tomorrow to tell Leawood when we will be able to advise you of our ability to proceed with the transaction." Pl. 56.1 ¶ 136.

On May 19, 2010, Leawood's counsel provided Alesco's counsel with copies of the approvals from the Federal Reserve

Bank of Kansas and the Office of the State Bank Commissioner of Kansas for Cross-First to acquire 100% of the voting shares of T & C Bank and advised that the "Closing Date for the [TruPS] Transaction is *no later than* June 7, 2010." Pl. 56.1 ¶¶ 141–42. Notwithstanding the fact that notice was not given until May 19, 2010, as opposed to May 6, 2010 (the date the Kansas Bank Commissioner approved the Asset Contribution Transaction), Hillier, Alesco's witness pursuant to Fed.R.Civ.P. 30(b)(6), testified that the delay in notice did not present any problems for closing the transaction. Deposition of Alesco Preferred Funding X, Ltd., Through Samuel Hiller, March 28, 2011 ("Hillier Dep.") at 417–18. The Leawood/Alesco Agreement provided that "the closing" would take place thirty days from the date the required regulatory approvals were received. Thirty days after May 6, 2010—the date both regulatory approvals were received—was June 5, 2010, not June 7, 2010. Def. 56.1 ¶ 38.

Hunton & Williams advised Cohen that a delay of the closing date beyond June 7, 2010 would constitute a breach of contract and would harm both Leawood and CrossFirst. *Id.* ¶ 143. Hunton & Williams requested confirmation that Cohen and Alesco "are committed to closing the Transaction on or before June 7, 2010 and will comply with their obligations" under the Leawood/Alesco Agreement. *Id.* ¶ 144.

On May 26, 2010, Cohen sent a letter to noteholders of Alesco requesting that objections to the sale of the TruPS for $1,000,000 be submitted within 15 business days. *Id.* ¶¶ 148–49. This letter constituted a proposal to the investors to approve something that Alesco had already committed to doing. *Id.* ¶ 153. Since investor responses were not due until June 17, 2010, Alesco was not prepared to close the transaction by June 7, 2010. *See* Hillier

Dep. at 296–297. ("Without investor consent, we weren't going to close the transaction.").

On May 28, 2010, Cohen's counsel wrote a letter to Leawood's counsel which stated:

> Assuming compliance with the Issuer's internal procedure in connection with the Transaction, the Issuer would be prepared to instruct the CDO Trustee (as defined in the Letter Agreement) to deliver all of the TruPS to the Indenture Trustee under the procedure outlined in Paragraph 3 of the Letter Agreement. The Issuer cannot, however, commit to the timing requested in your letter of May 19, 2010.

*See* Pl. 56.1 ¶ 160.

On June 7, 2010, Leawood wrote that it was "ready, willing and able to close the Transaction today in accordance with the terms of the Agreement" and directed Alesco to "provide us with your wire instructions immediately upon receipt of this letter" to fund the purchase price of the TruPS. *See* Bartkoski Decl. ¶ 48, Ex. K. Alesco did not respond to the June 7, 2010 letter. Pl. 56.1 ¶ 166. Alesco did not sell the TruPS to Leawood for $1 million on or before June 7, 2010. Pl. 56.1 ¶ 168.

In order for the Asset Contribution Transaction to close, Alesco contends that various documents, including the tenant estoppel agreement, had to be signed and delivered at the closing of the Asset Contribution Transaction. Def. 56.1 ¶ 46. Leawood disputes this and notes that the parties could "waive whatever conditions they want to waive," including the requirement that certain documents had to be signed and delivered. Pl. Resp. 56.1 ¶ 46 (citing Deposition of Christopher Ryan Jones, April 6, 2011 ("Jones Dep.") at 30, 34).

On June 30, 2010, the Asset Contribution Agreement was amended so that "if

the [TruPS] Redemption is not completed on or before Closing [of the T & C Bank Acquisition], they [Leawood and Cross-First] will jointly pursue … any claims related to or arising out of the failure of the current [TruPS] holder (or successor holder) to allow [Leawood] to redeem the [TruPS]." Pl. 56.1 ¶¶ 175–77. On this date, Leawood and CrossFirst also executed an Assignment and Assumption Agreement whereby CrossFirst agreed to waive the redemption of the TruPS as a condition to closing and CrossFirst agreed to assume Leawood's obligations for the TruPS. Id. ¶¶ 178–79. Alesco never received a copy of the Assignment and Assumption Agreement. Def. Resp. 56.1 ¶ 179. The TruPS Redemption did not close on June 30, 2010 and the TruPS have not been redeemed to this date. Pl. 56.1 ¶¶ 181–82.

Summary judgment is appropriate where, drawing all reasonable inferences in favor of the non-moving party, the evidence demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The key issue that is relevant to both the plaintiffs' motion for partial summary judgment and the defendant's motion for summary judgment is whether Alesco breached the agreement with Leawood by failing to redeem the TruPS on June 7, 2011. The key provision of the contract that is in dispute states:

> Leawood shall pay the Purchase Price to Issuer at the closing of its pending Asset Contribution transaction (the "Asset Contribution") with CrossFirst Holdings, LLC ("CrossFirst"). Closing will occur no later than thirty days following the receipt by CrossFirst of approval by the Board of Governors of the Federal Reserve System and the Office of the State Bank Commissioner of Kansas (the "CrossFirst Approval") for its Change of Control Application relating to CrossFirst's acquisition of Leawood and the Transaction (the "Change of Control Application"); provided, however, that closing of the Transaction shall not occur later than June 30, 2010 (the "Closing Date"). The only preconditions to Leawood's delivery of the Purchase Price to Manager and Issuer's delivery of the TruPS to Leawood is the CrossFirst Approval and the subsequent closing of the Asset Contribution.

See Leawood/Alesco Agreement ¶ 2 (emphasis supplied).

Alesco contends that it had no obligation to close the TruPS Transaction because the Asset Contribution Transaction never closed. Leawood contends that the Asset Contribution Transaction and TruPS Transaction were supposed to occur simultaneously and that Alesco's failure to close the TruPS Transaction actually prevented the closing of the Asset Contribution Transaction. The Court initially found that it could not resolve the dispute before the conclusion of discovery because the plain language of the Leawood/Alesco Agreement provides some support for both plaintiffs' interpretation and defendant's interpretation. According to that agreement, Leawood "shall pay the Purchase Price" to Alesco "at the closing of the Asset Contribution transaction," thus suggesting that both the closing of the Asset Contribution Transaction and the TruPS Transaction would occur at the same time. However, the letter agreement goes on to state that a precondition to Alesco's delivery of the TruPS is the "subsequent closing of the Asset Contribution [Transaction]," providing some support for defendant's contention that the Asset Contribution Transaction had to close prior to the delivery of the TruPS.

■ While the Court was unable to resolve the dispute based solely on the language of the Leawood/Alesco Agreement, the subsequent discovery makes clear beyond reasonable dispute that plaintiffs' interpretation of the contract is correct and that plaintiffs are entitled to partial summary judgment. The summary judgment record demonstrates that the defendant was well-aware that the TruPS needed to be redeemed before the Asset Contribution Transaction could close. It is undisputed that Leawood furnished Alesco a copy of the Asset Contribution Agreement, which provides that the TruPS must be redeemed in order for the Asset Contribution Transaction to take place. *See* Def. Resp. 56.1 ¶ 39. And the Alesco's 30(b)(6) witness has confirmed that the parties "envisioned" that the transactions would occur at the same time. *See* Hillier Dep. at 143, 199–200.

Of course, Alesco would be excused from performance in the event that the Asset Contribution Transaction was not going forward. That is, Alesco was only obligated to redeem the TruPS in the event that the "subsequent closing of the Asset Contribution Transaction" took place. Here, the only obstacle to the completion of the Asset Contribution Transaction was Alesco's refusal to redeem the TruPS. Thus, notwithstanding the ambiguous language in the letter agreement, the undisputed facts demonstrate that the parties agreed that the transactions would close at the same time. Thus, the fact that the Asset Contribution Transaction did not close on June 7, 2011 does not excuse Alesco's failure to perform.

■ While Alesco argues that Leawood itself breached the contract (1) by not providing notice of state regulatory approval on the exact date Leawood received notice and (2) by setting the closing date on June 7, 2010 instead of June 5, 2010 (since June 5, 2010 was technically thirty days after the regulatory approval), neither of these breaches are material and thus do not excuse Alesco's non-performance. With respect to the improper notice, there is no evidence that the failure to give notice on the exact date caused any harm to Alesco or caused any delay in Alesco's ability to close the transaction. Even, Alesco's 30(b)(6) witness testified that the delayed notice caused Alesco no harm. Hillier Dep. at 418–20. And setting the closing date for June 7, 2010 as opposed to June 5, 2010 was entirely appropriate in light of the fact that June 5 was a Saturday and June 7 was the next business day. *See* N.Y. Gen. Constr. Law § 25(1) ("Where a contract ... authorizes or requires ... the performance of a condition within or before or after a period of time computed from a certain day, and such period of time ends on a Saturday ... unless the contract expressly or impliedly indicates a different intent, such ... condition performed on the next succeeding business day.").

Alesco also argues that Leawood itself was not prepared to go forward with the transaction on June 7, 2010 because certain documents were not ready and Cross-First had not provided the money to Leawood, but there is no reason to believe that these tasks could not have been completed in time had Alesco been prepared to go forward with the transaction. Indeed, an email sent by Leawood on June 7, 2010 requesting Alesco to "provide [Leawood] with [ ] wire instructions immediately upon receipt of this letter," suggests that Leawood was prepared to go forward with the transaction on June 7, 2010. Moreover, since the defendant by letter indicated in writing that it "could not commit" to the June 7, 2010 closing date and, indeed, the defendant set the deadline for investor consent as June 17, 2010, after the June 7, 2010 closing date, Leawood was not required to engage in "[a]cts made futile by the breaching party" in order to seek re-

covery against Alesco. *See Scholle v. Cuban–Venezuelan Oil Voting Trust*, 285 F.2d 318, 320 (2d Cir.1960).

Having found that Alesco breached the letter agreement, the Court now addresses whether CrossFirst is a third party beneficiary entitled to relief. "Under New York law in order to recover as a third-party beneficiary of a contract, a claimant must establish that the parties to the contract intended to confer a benefit on the third party." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124–25 (2d Cir.2005). In this case, the Court concludes that CrossFirst is a third party beneficiary of the Leawood/Alesco because the parties to the Leawood/Alesco Agreement intended to benefit CrossFirst. The agreement itself refers to CrossFirst a total of eleven times, demonstrating that the agreement was connected to Leawood's attempted sale of T & C Bank to CrossFirst. Also, Paragraph 14 of the agreement expressly provides that CrossFirst may "refer to the financial terms of this Letter Agreement in the open section of the [T & C Bank] Change of Control Application" to the regulators and "include a copy of this Letter in the confidential section of the Change of Control Application." Leawood/Alesco Agreement ¶ 14.

Moreover, the testimony of Hillier, Alesco's 30(b)(6) witness, confirms that Alesco was certainly aware that the Leawood/Alesco Agreement would benefit CrossFirst and that the entire purpose of redeeming the TruPS was to enable CrossFirst to purchase T & C Bank from Leawood. While Leawood was "technically" the purchaser, Alesco knew that CrossFirst funded the redemption transaction. Hillier Dep. at 322–325. Alesco also recognized that CrossFirst would benefit from the discounted price paid for the TruPS, the cap on CrossFirst's legal fees in connection with processing the redemption, and the ability to acquire a bank with debt retired at a discount, all of which were elements of the Leawood/Alesco Agreement. Hillier Dep. at 115–18, 126–27, 129–30, 322, 367. Finally, Alesco understood that CrossFirst would rely on the Leawood/Alesco Agreement in connection with the regulatory approval process, as he acknowledged that the Leawood/Alesco Agreement was intended to "make the [regulatory] approval easier" for CrossFirst. Hillier Dep. at 117–18. Thus, given that the parties intended to benefit CrossFirst in that the main purpose of the Leawood/Alesco Agreement was to permit CrossFirst to acquire T & C Bank, the Court concludes that CrossFirst is a third-party beneficiary under the Leawood/Alesco Agreement.

Finally, the Court addresses Alesco's contention that even if CrossFirst is a third party beneficiary, the plaintiffs cannot both recover for the same underlying breach of contract claim. While Alesco cites *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 60–61 (S.D.N.Y.1999), for the proposition that Leawood and CrossFirst cannot both recover for a breach of the Leawood/Alesco Agreement, the Court in *Kunica* merely prevented a double recovery where the plaintiff was a single individual trying to recover both as the assignee of a bankrupt company and as an individual plaintiff suing on a third-party beneficiary theory. Here, the plaintiffs are two different parties seeking recovery for allegedly distinct damages. As long as Leawood and CrossFirst can demonstrate that they suffered distinct damages, they can both recover damages for the same breach. *See, e.g., Cauff, Lippman & Co.*, 807 F.Supp. 1007, 1024 (S.D.N.Y.1992) (awarding distinct breach of contract damages to promisee and third-party beneficiary flowing from the same underlying breach); *Tucci v. 56 Beaver St. Rest. Corp.*, 1986 WL 6166, at *4 (S.D.N.Y. May 23, 1986) ("If a contract indicates the req-

uisite intent of the parties in privity to confer a benefit upon a third party, both the promise and the third-party beneficiary may sue to enforce the contract."). Of course, since Leawood has not moved for summary judgment on the issue of damages, the Court need not decide the amount of damages (if any) owed to Leawood and/or CrossFirst at this time. The Court merely concludes that CrossFirst's claim cannot be dismissed at this stage based on the mere fact that both Leawood and CrossFirst are seeking damages in connection with the same underlying breach.

Accordingly, the Court grants plaintiffs' motion for partial summary judgment and thus concludes (1) that defendant Alesco breached the Leawood/Alesco Agreement by failing to redeem the TruPS on or before June 7, 2010, and (2) that Cross-First is a third party beneficiary under the Leawood/Alesco Agreement. The parties are directed to jointly call Chambers no later than one week from the date of this Memorandum Order to schedule a bench trial on the remaining issue in this case: the amount of damages (if any) owed to Leawood and/or CrossFirst.