18-1543-cv(L)
*Wilder v. World of Boxing, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of June, two thousand nineteen.

Present:
>            DEBRA ANN LIVINGSTON,
>            SUSAN L. CARNEY,
>                       *Circuit Judges*,
>            RICHARD M. BERMAN,
>                       *District Judge*.\*

_____

DEONTAY WILDER, DIBELLA ENTERTAINMENT, INC.,

>            *Plaintiffs-Counter-Defendants-*
>            *Appellants-Cross-Appellees*,

        v.                                                          18-1543-cv; 18-1567-cv

WORLD OF BOXING LLC, ALEXANDER POVETKIN,

>            *Defendants-Counter-Claimants-*
>            *Appellees-Cross-Appellants*.

_____

For Plaintiffs-Counter-Defendants-
Appellants-Cross-Appellees:                PETER B. SCHALK (Judd Burstein, *on the brief*), Judd
                                            Burstein P.C., New York, NY.

---

\* Judge Richard M. Berman, of the United States District Court for the Southern District of New York, sitting by designation.

1

For Defendants-Counter-Claimants-
Appellees-Cross-Appellants:       KENT A. YALOWITZ, Arnold & Porter Kaye Scholer
                                  LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Carter, *J.*, Gorenstein, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Counter-Defendants-Appellants-Cross-Appellees Deontay Wilder ("Wilder") and DiBella Entertainment, Inc. ("DBE") (collectively, "Wilder Parties") appeal from a May 10, 2018 judgment of the United States District Court for the Southern District of New York dismissing on summary judgment their breach of contract claims according to the terms of its April 19, 2018 opinion. Defendants-Counter-Claimants-Appellees-Cross-Appellants World of Boxing LLC ("WOB") and Alexander Povetkin ("Povetkin") (collectively, "WOB Parties") appeal from that same judgment and accompanying opinion, which dismissed their breach of contract claims as well as their claim for liquidated damages based on the Wilder Parties' alleged breach of an escrow agreement. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**The Bout Agreement**

Both sets of parties bring claims against each other for breach of an agreement that went into effect on April 11, 2016, and which governed a fight that was to occur between Wilder and Povetkin (the "Bout Agreement"). Under New York law, the elements of a breach of contract claim "include the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." *Harris v. Seward Park Hous. Corp.*, 79 A.D.3d 425, 426 (1st Dep't 2010).

2

**Wilder Parties' Claims**

The district court dismissed the Wilder Parties' claims for breach of contract against the WOB Parties after determining that (1) the decision of the World Boxing Council (the "WBC," the boxing organization sanctioning the fight contemplated in the Bout Agreement) that it could not be conclusively proved that Povetkin ingested a banned substance was fatal to their claim against Povetkin, and (2) the substantial discretion given to the WBC in the parties' contract served to override any failure by the WOB to perform its obligation to stage the fight on a given day. For substantially the same reasons as the district court, we agree that the Wilder Parties' claims were properly dismissed.

Although a jury found that Povetkin ingested a banned substance,[1] the Bout Agreement did not by its terms require that the fighters refrain from ingesting banned substances. And the *WBC itself* concluded that it could not be determined that Povetkin had violated its anti-doping rules by ingesting meldonium. Therefore, as the district court observed, to accept the Wilder Parties' arguments now "would require this Court to determine that Povetkin breached the contract by failing to abide by 'WBC anti-doping requirements' when the parties specifically agreed that WBC's decision on this question would be conclusive." Special Appendix ("SPA") 22. That the Wilder Parties disagree with the WBC's decision, without more, cannot necessitate a different outcome. *See Crouch v. Nat'l Ass'n for Stock Car Auto Racing*, 845 F.2d 397, 403 (2d Cir. 1988) (observing that courts should "defer[] to a [private sports organization's]

---

[1] It is not necessary to the resolution of the claims before us on appeal to address the WOB Parties' arguments that the single-issue jury verdict should be vacated, and we therefore decline to do so. Because the cases were consolidated at the time the trial took place, we see no reason why the WOB Parties may not raise these arguments during any future litigation of their defamation claim against the Wilder Parties, assuming the verdict's relevance to the outcome of that claim.

3

interpretation of its own rules in the absence of an allegation that [the organization] acted in bad faith or in violation of any local, state or federal laws").

As to the Wilder Parties' claim against WOB, we again agree with the district court that "the structure and language of the Bout Agreement make clear that WOB did not breach the agreement." SPA 25. Given that, according to the Bout Agreement, the WBC could de-certify the fight and "perform any and all decisions . . . and actions relating to" it at any time, Joint Appendix ("J.A.") 64, we do not see how the WOB could nevertheless still be required under the agreement to stage that same fight once the WBC had exercised its discretion to postpone it.[2] Therefore, the Wilder Parties' breach of contract claims were properly dismissed as to both Povetkin and WOB.

**WOB Parties' Claims**

The district court also dismissed the WOB Parties' breach of contract claims against the Wilder Parties, based on its determination that any damages suffered by the WOB Parties flowed from the WBC's determination to postpone and ultimately not to reschedule the fight, and not from any alleged anticipatory repudiation by the Wilder Parties. Again, we agree. As the district court observed, WBC statements explicitly provided that the fight was postponed due to the investigation over Povetkin's positive test. Speculation that the Wilder Parties' statements might have influenced WBC not to reschedule the fight is unfounded, regardless of the

---

[2] The Wilder Parties cite to *World of Boxing LLC v. King*, 56 F. Supp. 3d 507 (S.D.N.Y. 2014), another case dealing with a fight's cancellation due to doping, and in which the promoter *was* found liable for his unexcused failure to produce his fighter on the agreed-upon date, as support for holding WOB liable. However, in *King*, the boxing organization sanctioning the fight had a strict liability standard for doping, "thereby rendering it *impossible* for [the fighter's] promoter to fulfill his contractual obligation." SPA 27 (emphasis added). Here, given the WBC's totality-of-the-circumstances approach to doping violations, there was no such inherent impossibility.

4

messaging coming from the Wilder team, when the statements by the WBC were clearly, and repeatedly, to the contrary.

The WOB Parties argue that the district court inappropriately shifted the burden onto them to prove that the WBC would have rescheduled the fight but for the Wilder Parties' actions, when all they had to show was that they were ready and willing to perform. We disagree with this characterization of the proceedings below. While the district court may have observed that "there is no evidence that would allow a jury to conclude that the WBC's failure to reschedule the Bout was influenced by Wilder's purported breaches," the crux of its decision was that "a jury would be compelled to find that the Bout did not go forward because of Povetkin's positive drug test and the WBC's ensuing decisions in response to that positive test." SPA 32-33. Furthermore, even under their own statement of the causation standard, the WOB Parties fail. They might have *wanted* to perform under the Bout Agreement; however, given that the fight was postponed due to Povetkin's positive test, that Povetkin was under continued investigation for said positive test, and that he was later suspended further for use of another banned substance, the WOB Parties were not *able* to perform. *See Scholle v. Cuban-Venezuelan Oil Voting Trust*, 285 F.2d 318, 320 (2d Cir. 1960) ("The party wronged must show, however, that the breach caused his loss. To do this he must prove that he intended to and was able to perform when his performance was due.").

**Escrow Agreement**

Lastly, the parties dispute who is entitled to the $4,369,365 placed into escrow by WOB as security for Wilder's purse for the fight and governed by an agreement dated April 19, 2016 (the "Escrow Agreement"). WOB additionally claims that it is entitled to $2.5 million in liquidated damages under the Escrow Agreement, due to the Wilder Parties' alleged bad faith

5

objection to the release of the escrow funds following the fight's postponement. *See* J.A. 1022-23 ("The parties agree and acknowledge that the submission of an objection in writing to the Escrow Agent which is not made in good faith would cause harm to the party entitled to the disbursement and because actual damages would be difficult to quantify, the party who has filed such objection agrees to pay liquidated damages to the party entitled to the disbursement in the amount of USD $2.5 million . . . .").

As we agree with the district court's conclusion that neither party has successfully made out a claim for breach of the Bout Agreement, we see no reason why WOB should not be entitled to return of the funds held in escrow. The Escrow Agreement unequivocally states that "[u]pon receipt by the Escrow Agent of an original affidavit signed by an officer of WOB, containing the signature and a seal of the notary public, stating that the Bout did not or will not take place on May 21, 2016 and a copy of an article from www.fightnews.com, reporting that the Bout between Wilder and Povetkin is cancelled or postponed and did not or will not take place on May 21, 2016, Escrow Agent shall disburse the entire Escrow Property to WOB." J.A. 1022. No one disputes that the fight did not take place on May 21, 2016. Thus, absent any viable breach of contract claim against it, we agree that WOB's funds should be returned to it.

However, we also agree with the district court that the Wilder Parties' request to the escrow agent to hold the funds pending the outcome of their breach of contract claims against the WOB Parties does not warrant payment of liquidated damages. In a situation where a party "was specifically bound by the contract to act in good faith," we have observed that whether the defendant acted in good faith is "governed by a subjective, rather than objective standard." *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1560 (2d Cir. 1989). Moreover, "a covenant of good faith and fair dealing is implied in every contract governed by New York law." *Id.* That

implied covenant requires "that neither party . . . do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87 (1933). The implied duty cannot impose obligations that would be inconsistent with the rest of the contract. *See Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384, 389 (1995). However, "it is used to cabin some contractual rights, holding that a contractual right affording discretion may not be exercised in bad faith—arbitrarily, irrationally, or malevolently." *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 467 (S.D.N.Y. 2013) (citing *Dalton*, 87 N.Y.2d at 389).

We agree with the district court that the Wilder Parties did not act objectively unreasonably in objecting to disbursement of the funds. While WOB is correct that the Escrow Agreement clearly contemplates that the money goes to Wilder if the fight takes place and to WOB if it does not, it does not necessarily follow that those provisions "should end the matter." WOB Parties' Brief at 42. If they did, why would the Escrow Agreement provide for objections in the first place? Surely *any* objection would be in bad faith if the fight's occurrence were all that could be considered by this Court, because there could be no reasonable debate over the fact of whether or not the fight occurred on May 21, 2016. And as the district court observed, "there were certainly non-frivolous arguments that Povetkin had breached the Bout Agreement when he tested positive for Meldonium," which would lead the Wilder Parties to believe they were entitled to damages equaling their expected payment under the Bout Agreement, *i.e.* to the money in escrow. SPA 40.

We also see no evidence that the Wilder Parties objected to the disbursement of the funds under circumstances suggesting subjective bad faith. Arguments by WOB recharacterizing a variety of documents unearthed in discovery to suggest that Wilder's team did not want him to

7

box Povetkin, and that they actually wanted him to get paid without the fight ever happening, are unavailing. The Wilder Parties' insistence that Wilder be paid, from which the WOB Parties insist "[a] jury could infer a motive of greed," WOB Parties Brief at 46, is countered by the non-frivolous arguments available to the Wilder Parties regarding the WOB Parties' potential breach of the Bout Agreement. Wilder's team had been preparing for this fight for months and planning so that he would reach peak condition at just the right time; a jury could not reasonably infer *malevolent* intentions simply from their frustration about the fight's postponement and Povetkin's positive test. Given the failure of WOB to come forward with any more concrete evidence of bad faith, we agree with the district court that summary judgment was properly granted on the claim for liquidated damages.

We have considered the parties' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8